UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAHBU BEHLIN,<br><br>                    Plaintiff,<br><br>                    -v.-<br><br>RITE AID PHARMACY STORE, VICTOR<br>GONZALEZ, MALCIAL TUERO, DAMION BROWN,<br>GARFIELD MEAD, and VICTOR REYES,<br>*individually and in their official capacities*,<br><br>                    Defendants. | 18 Civ. 4335 (KPF)<br><br>**OPINION AND ORDER** |

KATHERINE POLK FAILLA, District Judge:

This case stems from unusual facts involving an altercation between Plaintiff and two employees of Defendant Rite Aid Pharmacy Store ("Rite Aid"). On June 20, 2015, Plaintiff was observed stealing merchandise from a Rite Aid store located in New York City. After calling the police, two Rite Aid employees attempted to stop Plaintiff from fleeing with stolen items by confronting him outside of the store, chasing after him, and ultimately throwing a city trashcan at him. The incident culminated in Plaintiff's arrest and subsequent conviction for armed robbery and other related offenses.

Plaintiff brought suit against Rite Aid and the police officers involved in his arrest, Defendants Victor Gonzalez, Malcial Tuero, Damion Brown, Garfield Mead, and Victor Reyes (collectively, the "City Defendants," and together with Rite Aid, "Defendants"), primarily alleging violations of his federal constitutional rights pursuant to 42 U.S.C. § 1983. As against Rite Aid, Plaintiff asserts (i) a Section 1983 claim for false arrest and unlawful detention;

(ii) a Section 1983 claim for excessive use of force; and (iii) state-law claims for assault and battery.  With respect to the City Defendants, Plaintiff asserts Section 1983 claims for (i) false arrest and unlawful detention; and (ii) deliberate indifference to his medical needs.

Both Rite Aid and the City Defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  The City Defendants contend that Plaintiff's ultimate conviction forecloses his false arrest claim and that the record establishes that he did not suffer a sufficiently serious medical condition to establish a deprivation of his constitutional rights.  Rite Aid separately argues that Plaintiff has failed to establish that it engaged in any state action cognizable under Section 1983.

For the reasons set forth in the remainder of this Opinion, the Court concludes that the City Defendants are entitled to summary judgment in full, and that Rite Aid is entitled to summary judgment as to Plaintiff's false arrest claim.  However, because of the procedural history of this case — including in particular a truncated discovery period and Plaintiff's recasting of certain claims in his opposition papers — the factual record is insufficiently developed as to Plaintiff's excessive force and state-law assault and battery claims against Rite Aid, and summary judgment is denied as to these claims.

## BACKGROUND[1]

### A.    Factual Background

On June 20, 2015, at approximately 2:40 p.m., Plaintiff was outside of a Rite Aid pharmacy store located at 3539 Broadway, at the intersection of Broadway and West 145th Street in New York City.  (Rite Aid 56.1 ¶ 2; City 56.1 ¶ 17).  By that time, Felix Luna, a Rite Aid employee, had called the police to inform them that he had just seen Plaintiff steal items from the store.  (City 56.1 ¶ 17).  Jermaine Williams, another Rite Aid employee, followed Plaintiff outside, grabbed his arm, and demanded that he return the stolen items.  (Rite Aid 56.1 ¶ 3; Compl. ¶ D.2).

Plaintiff eluded Williams's grasp and proceeded to walk away from the store, heading up Broadway toward 146th Street, with Williams and Luna in tow.  (Compl. ¶¶ D.7-9; IPTC Tr. 7:11-14).  In an effort to stop Williams and Luna from continuing to grab at him, Plaintiff brandished a pair of manicure

---

[1]     The facts in this Opinion are drawn from Plaintiff's Complaint ("Complaint" or "Compl." (Dkt. #2)), as supplemented by Plaintiff's statements made at the initial pretrial conference of May 3, 2019 (Dkt. #36 (transcript of conference of May 3, 2019 ("IPTC Tr."))).  The Court also relies upon Rite Aid's Statement of Material Facts pursuant to S.D.N.Y. Local Civil Rule 56.1 ("Rite Aid's 56.1 Statement" or "Rite Aid 56.1" (Dkt. #105)) and the City Defendants' Rule 56.1 Statement of Material Facts ("City Defendants' 56.1 Statement" or "City 56.1" (Dkt. #99)).  Citations to Rule 56.1 statements incorporate by reference the documents and testimony cited therein.  *See* Local Civil Rule 56.1(d).  The Court also draws certain facts from the exhibits attached to the Declaration of Andrew B. Spears in support of the City Defendants' motion for summary judgment (Dkt. #97 ("Spears Decl., Ex. [ ]")).

For ease of reference, the Court refers to Rite Aid's memorandum of law in support of its motion for summary judgment as "Rite Aid Br." (Dkt. #108); the City Defendants' memorandum of law in support of their motion for summary judgment as "City Br." (Dkt. #98); Plaintiff's consolidated memorandum of law in opposition to Defendants' motions for summary judgment as "Pl. Opp." (Dkt. #112); Rite Aid's reply brief in further support of its motion for summary judgment as "Rite Aid Reply" (Dkt. #116); and the City Defendants' reply brief in further support of their motion for summary judgment as "City Reply" (Dkt. #115).

scissors at them and threw various items that he had taken from Rite Aid onto the street.  (IPTC Tr. 7:15-23, 8:19-22; Compl. ¶¶ D.6, 10).  As Plaintiff continued to walk away, Luna picked up a metal trashcan from the city sidewalk and threw it at Plaintiff, striking him on his left hip and leg.  (Compl. ¶¶ D.13-14; IPTC Tr. 10:12-19).  On Plaintiff's recollection, the impact of the projectile trashcan did not break any of his bones, but caused him pain in his lower back, numbness in his left leg, and some swelling.  (IPTC Tr. 11:3-7).  After being struck by the trashcan, Plaintiff continued his flight and entered a taxicab that pulled up with a female passenger, whom Plaintiff refers to as his "codefendant."  (*Id.* at 11:18-23, 12:2-11).

Just minutes later, at approximately 2:49 p.m., Plaintiff and his codefendant were arrested in the vicinity of 146th Street and Amsterdam Avenue.  (City 56.1 ¶ 18; IPTC Tr. 12:10-22).  At or just after that time, the Rite Aid employees arrived on the scene.  Luna positively identified Plaintiff to Gonzalez as the individual responsible for the robbery at the nearby Rite Aid.  (City 56.1 ¶ 19; IPTC Tr. 13:13-16).  Plaintiff recalls that, as he was being transported to the 30th Precinct, he notified Gonzalez and Brown that his leg was hurting because Luna had hurled a trashcan at him.  (City 56.1 ¶ 20; *see also* IPTC Tr. 15:19-23; Compl. ¶¶ 16-18).  Upon arriving at the precinct, Plaintiff reiterated to Reyes, the officer processing Plaintiff's arrest, that he required medical attention.  (IPTC Tr. 16:11-18; *see also* City 56.1 ¶ 24).  Plaintiff alleges that Reyes told him that he would have to wait until after he was processed to be escorted to the hospital.  (IPTC Tr. 16:16-18).  Once he

4

was transported to central booking, Plaintiff renewed his request for medical treatment, but decided not to "force the issue at that time" and "tried to stick it out." (*Id.* at 17:21-18:3). In addition to his requests of Gonzalez, Brown, and Reyes, Plaintiff also claims to have apprised Tuero and Mead of his need for medical attention while at the 30 Precinct at or around 4:00 p.m. (Compl. ¶ D.22).

On June 22, 2015, Plaintiff arrived at Rikers Island, whereupon he saw a doctor as part of his new admission medical intake examination. (City 56.1 ¶ 27). The records from this examination do not note any injuries to Plaintiff's left leg or back — or, indeed, any complaints by Plaintiff of such injuries. (*Id.* at ¶¶ 29-30). The medical evaluation similarly did not trigger Plaintiff's receipt of further medical treatment for an injury to his leg or back. (*Id.* at ¶ 31).

On November 18, 2016, following a jury trial in New York County Supreme Court, Plaintiff was convicted of Robbery in the First Degree, Obstructing Governmental Administration in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Attempted Assault in the Third Degree, all in connection with the events of June 20, 2015. (City 56.1 ¶ 32; Rite Aid 56.1 ¶ 16). Thereafter, on February 16, 2017, Plaintiff was sentenced to an aggregate term of nine years of imprisonment for these offenses. (Spears Decl., Ex. G ("Certificate of Disposition")).

## B.   Procedural Background

Plaintiff commenced the instant action with the filing of the Complaint on May 29, 2018. (Dkt. #2). Rite Aid filed its Answer on January 8, 2019 (Dkt.

#23), and a subset of the City Defendants answered on March 1, 2019 (Dkt. #28).  The Court convened the initial pretrial conference on May 3, 2019, during which the parties discussed obstacles to service of process on the remaining City Defendants, Gonzalez and Brown.  (*See* Minute Entry of May 3, 2019).  The Court also deemed the allegations in the Complaint to be supplemented by Plaintiff's remarks at this conference.  (*See id.*).  Soon thereafter, the service issues were resolved (*see* Dkt. #39, 40), and the City Defendants filed a joint Answer to the Complaint on August 6, 2019 (Dkt. #41).

On September 17, 2019, the parties attended a pretrial conference, at which Plaintiff clarified that he intended to join Williams and Luna as defendants in the case, despite not having included these individuals in the caption of his Complaint.  (*See* Dkt. #48 (transcript of conference of September 17, 2019 ("Sept. 17, 2019 Tr.") at 7:18-25)).  Following this conference, the Court issued an Order of Service authorizing service of process on Williams and Luna.  (Dkt. #47).  Pursuant to the Order of Service, the United States Marshals Service attempted to serve these two individuals but were unsuccessful.  (Dkt. #50-51).  On January 30, 2020, the Court convened a conference to discuss the Marshals' unsuccessful efforts to serve Williams and Luna.  (*See* Minute Entry of Jan. 30, 2020; *see also* Dkt. #75 (transcript of conference of January 30, 2020 ("Jan. 30, 2020 Tr.")).[2]  That same day, the Court entered a case management plan that authorized six months for fact

---

[2]     There has been no subsequent attempt to serve Williams and Luna.  As neither individual has been properly served, they are not proper defendants in this case.

discovery and two months for expert discovery.  (Dkt. #58 ("Case Management Plan")).

On April 1, 2020, in light of the extenuating circumstances posed by the onset of the COVID-19 pandemic, the Court entered a 60-day stay of the case at Defendants' request.  (Dkt. #61).  The Court subsequently entered two 45-day extensions of this stay.  (Dkt. #63, 68).  On September 14, 2020, the day the final stay extension expired, Defendants filed a joint status letter proposing a schedule for the resumption of discovery and requesting leave to file summary judgment motions.  (Dkt. #72).[3]  By Order dated September 16, 2020, the Court declined to set a briefing schedule for Defendants' contemplated motions and instead ordered discovery to proceed on the limited issue of Plaintiff's medical records, while staying discovery as to all other matters.  (Dkt. #73).  In this Order, the Court explained that it did "not believe additional discovery [would] illuminate any of Plaintiff's claims at this time, and therefore stay[ed] all discovery except as ordered above, pending the production of Plaintiff's medical records or further order of the Court."  (*Id.* at 2).

On October 14, 2020, Plaintiff submitted a letter seeking leave to file an amended complaint to add a federal cause of action and additional facts concerning the use of excessive force by Luna and Gonzalez during Plaintiff's

---

[3]     The Electronic Case Filing ("ECF") system reflects that this matter remains stayed, despite the expiration of the stay on September 14, 2020.  (Dkt. #68, 69).  As such, the Clerk of Court is directed to lift the stay on this matter, to the extent it remains in effect.

arrest.  (Dkt. #77).[4]  The Court issued an Order on October 16, 2020, directing the parties to file additional briefing on Plaintiff's request to amend his pleadings, given that the last day to amend under the Case Management Plan had expired more than seven months prior, before imposition of the stay.  (Dkt. #79).  The parties did not brief the matter because, on October 30, 2020, Plaintiff withdrew his application to amend the Complaint.  (Dkt. #80).  The Court issued an Order on November 2, 2020, acknowledging Plaintiff's desire to withdraw his motion to amend and expressing its expectation that, absent renewal of this motion, the parties would continue to abide by the terms of the September 16, 2020 Order and pursue limited discovery into Plaintiff's medical records.  (Dkt. #81).

On April 5, 2021, the Defendants filed Plaintiff's medical records with the Court, under seal, along with a joint letter renewing their request to file motions for summary judgment.  (Dkt. #91, 92).  On April 7, 2021, the Court issued an endorsement of Defendants' letter, dispensing with the typical requirement of a pre-motion conference and scheduling Defendants' motions for summary judgment.  (Dkt. #93).  On May 7, 2021, Rite Aid and the City Defendants filed their respective motions for summary judgment and supporting papers.  (Dkt. #96-108).  On July 2, 2021, Plaintiff filed his opposition brief.  (Dkt. #112).  On July 26, 2021, Rite Aid and the City

---

[4]     The following day, on October 15, 2020, Plaintiff filed a second letter seeking to amend his complaint, which was identical in substance to his first letter requesting the same relief.  (Dkt. #78).

Defendants filed their reply briefs in further support of their motions for summary judgment.  (Dkt. #115, 116).

### DISCUSSION

**A.    Applicable Law**

**1.    Motions for Summary Judgment Under Federal Rule of Civil Procedure 56**

Under Federal Rule of Civil Procedure 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986).[5]  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Jeffreys* v. *City of New York*, 426 F.3d 549, 553 (2d Cir. 2005).

The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323.  The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that

---

[5]    The 2010 Amendments to the Federal Rules of Civil Procedure revised the summary judgment standard from a genuine "issue" of material fact to a genuine "dispute" of material fact.  *See* Fed. R. Civ. P. 56, advisory comm. notes (2010 Amendments) (noting that the amendment to "[s]ubdivision (a) ... chang[es] only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination.").  This Court uses the post-amendment standard, but continues to be guided by pre-amendment Supreme Court and Second Circuit precedent that refer to "genuine issues of material fact."

party's case, and on which that party will bear the burden of proof at trial." *Id.*
at 322; *see also Selevan* v. *N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir.
2013) (finding summary judgment appropriate where the nonmoving party
failed to "come forth with evidence sufficient to permit a reasonable juror to
return a verdict in his or her favor on an essential element of a claim" (internal
quotation marks omitted)).

If the moving party meets its initial burden, the nonmoving party must
then "set forth specific facts showing that there is a genuine issue for trial"
using affidavits or other evidence in the record, and cannot rely on the "mere
allegations or denials" contained in the pleadings. *Anderson*, 477 U.S. at 248;
*see also Wright* v. *Goord*, 554 F.3d 255, 266 (2d Cir. 2009). In other words, the
nonmoving party "must do more than simply show that there is some
metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd.*
v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere
speculation or conjecture as to the true nature of the facts to overcome a
motion for summary judgment," *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d
Cir. 1986).

"When ruling on a summary judgment motion, the district court must
construe the facts in the light most favorable to the non-moving party and
must resolve all ambiguities and draw all reasonable inferences against the
movant." *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir.
2003) (citation omitted). However, in considering "what may reasonably be
inferred" from witness testimony, the court should not accord the non-moving

party the benefit of "unreasonable inferences, or inferences at war with undisputed facts." *Berk* v. *St. Vincent's Hosp. & Med. Ctr.*, 380 F. Supp. 2d 334, 342 (S.D.N.Y. 2005) (citing *Cnty. of Suffolk* v. *Long Island Lighting Co.*, 907 F.2d 1295, 1318 (2d Cir. 1990)).

### 2. Motions for Summary Judgment in *Pro Se Cases*

In light of Plaintiff's *pro se* status, the Court "afford[s] [him] a special solicitude[,]" and, in this regard, will liberally construe his pleadings and motion papers. *Tracy* v. *Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). Under this directive, the Court will read Plaintiff's "submissions to raise the strongest arguments they suggest." *McLeod* v. *Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (quoting *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007)).

This task has been complicated by Plaintiff's failure to submit a Local Civil Rule 56.1 Statement of Material Facts in response to Defendants' summary judgment motions. Under Local Rule 56.1, an opponent is required to respond to each numbered paragraph contained in the movant's Rule 56.1 statement. *See* S.D.N.Y. Local Civil Rule 56.1(b); *see also id.* at 56.1(d). Specifically, the rule provides that uncontested statements of material facts "will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." *Id.* at 56.1(c); *see also Gubitosi* v. *Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (noting the same).

While "[p]*ro se* litigants are ... not excused from meeting the requirements of Local Rule 56.1," the Court retains discretion "to consider the substance of the plaintiff's arguments" even where there is incomplete compliance with the rule.  *See Wali* v. *One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009) (internal citations omitted); *see also Holtz* v. *Rockefeller & Co., Inc.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]hile a court is not required to consider what the parties fail to point out in their Local Rule 56.1 Statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." (internal quotation marks omitted)); *Hayes* v. *Cnty. of Sullivan*, 853 F. Supp. 2d 400, 406 n.1 (S.D.N.Y. 2012) ("In light of Plaintiff's *pro se* status, the Court overlooks his failure to file a Local Rule 56.1 Statement and conducts its own independent review of the record.").  To be fair to all parties, the Court will rely principally on its own assiduous review of the record.

## B.   Analysis

In exercising its obligation to read Plaintiff's submissions to raise the strongest arguments they suggest, the Court construes Plaintiff's pleadings to assert the following claims: (i) a false arrest claim pursuant to Section 1983 against both Rite Aid and the City Defendants; (ii) a deliberate indifference claim pursuant to Section 1983 against the City Defendants; (iii) an excessive

use of force claim pursuant to Section 1983 against Rite Aid; and (iv) state-law claims for assault and battery against Rite Aid.[6]

Both Rite Aid and the City Defendants have filed dispositive motions, seeking summary judgment as to all of Plaintiff's claims brought against them. The City Defendants argue that both Plaintiff's false arrest claim and deliberate indifference claim fail as a matter of law. As to the first, the City Defendants argue that because Plaintiff was ultimately convicted of the charges for which he was arrested, his false arrest claim must fail. (City Br. 7-8). The City Defendants likewise contend that Plaintiff's deliberate indifference claim must fail, because Plaintiff's medical records conclusively establish that he did not suffer from a sufficiently serious condition such that denial of immediate treatment constituted a deprivation of any constitutional right. (City Br. 4-7). As discussed later in this Opinion, the City Defendants are correct on both counts and are thus entitled to summary judgment on these two claims.

Rite Aid's motion for summary judgment is more difficult to resolve. Its primary argument is that Plaintiff's Section 1983 claims against it are fatally

---

[6]   Plaintiff made clear at the Initial Pretrial Conference of May 3, 2019, that he is not bringing claims for excessive use of force or assault and battery against the City Defendants. (*See* IPTC Tr. 21:21-25).

In addition to the claims the Court discerned from the Complaint, Plaintiff's opposition brief appears to present additional claims against the City Defendants for (i) failure to discipline Rite Aid for unlawful detention and assault; (ii) punching and throwing Plaintiff to the ground in a holding cell in the 30th Precinct; and (iii) denial of medical attention following the assault in the holding cell. The Court declines to consider these claims, which were not mentioned in either the Complaint or the initial pretrial conference. *See Thomas* v. *Egan*, 1 F. App'x 52, 54 (2d Cir. 2001) (summary order) ("A claim must be set forth in the pleadings, in order to give defendants fair notice of the nature of the plaintiff's claim. Thus, it is inappropriate to raise new claims for the first time in submissions in opposition to a summary judgment motion." (internal citations omitted)).

13

flawed because Plaintiff has failed to establish that Rite Aid or any of its employees was acting under color of state law during any of the events giving rise to Plaintiff's claims.  (Rite Aid Br. 7-11).  The Court acknowledges that Rite Aid's arguments have merit.  However, given the procedural history of this matter, the Court believes that summary judgment in favor of all of Rite Aid's claims would not be appropriate, and it will accordingly grant summary judgment only as to Rite Aid's false arrest claim.

This Court's earlier decision to truncate discovery has, without meaning to, deprived Plaintiff of the opportunity to obtain evidence to support his current arguments of state action on the part of Rite Aid's employees.  Whether Plaintiff will obtain such evidence remains to be seen, but the Court believes that he should be given such an opportunity.  For this reason, it cannot dismiss at this time his claims of excessive force, assault, and battery against Rite Aid.  That said, and for the reasons detailed later in this Opinion, no amount of discovery will save Plaintiff's false arrest claim against Rite Aid, and for that reason it is dismissed.

### 1. Both Rite Aid and the City Defendants Are Entitled to Summary Judgment as to Plaintiff's Claims of False Arrest

Plaintiff explicitly pleads in the Complaint a claim for unlawful detention against Rite Aid, which the Court interprets as being brought under Section 1983.  (Compl. ¶ D.24; *see also* IPTC Tr. 19:13-18).  Although not explicitly pleaded as such, the Court construes Plaintiff's false arrest claim to also encompass the City Defendants.  (*See* IPTC Tr. 19:13-18).  "In order to maintain a [S]ection 1983 action, two essential elements must be present:

[i] the conduct complained of must have been committed by a person acting under color of state law; and [ii] the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell* v. *Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citations omitted).[7]  A Section 1983 claim for false arrest "rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." *Weyant* v. *Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citation omitted).  The substantive elements of a false arrest claim under Section 1983 are "substantially the same as [for] a claim for false arrest under New York law." *Id.* (citations omitted).  To establish a claim for false arrest and imprisonment, a plaintiff must prove: "[i] the defendant intended to confine plaintiff; [ii] plaintiff was conscious of the confinement; [iii] did not consent to the confinement; and [iv] the confinement was not otherwise privileged." *Savino* v. *City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citation omitted).

"The Second Circuit has recognized that in enacting [Section] 1983, Congress intended to incorporate 'the common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution ...

---

[7]     It is undisputed that the City Defendants were acting under color of state law when they arrested Plaintiff.  *See, e.g., West* v. *Atkins*, 487 U.S. 42, 50 (1988) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.").  On the other hand, Rite Aid contests its status as a state actor.  (*See* Rite Aid Br. 7-11).  But, as the Court noted previously, there does not currently exist a sufficient factual record to determine the issue of state action as to Rite Aid.  Thus, for the sole purpose of analyzing Plaintiff's false arrest claim, the Court presumes Rite Aid's status as a state actor and proceeds to analyze whether Plaintiff has established that he was deprived of a federal right incident to his allegedly false arrest — which he was not.

that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested.'" *Kennedy* v. *City of New York*, No. 12 Civ. 4166 (KPF), 2015 WL 6442237, at *12 (S.D.N.Y. Oct. 23, 2015) (quoting *Cameron* v. *Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986)); *see also Phelan* v. *Sullivan*, 541 F. App'x 21, 23 (2d Cir. 2013) (summary order) ("A false arrest claim is defeated by the plaintiff's conviction for the offense for which he is arrested"). Here, it is undisputed that Plaintiff was convicted of Obstructing Governmental Administration in the Second Degree, Robbery in the First Degree, Criminal Possession of a Weapon in the Third Degree, and Attempted Assault in the Third Degree, all relating to his arrest on June 20, 2015. (*See* Certificate of Disposition). For this reason alone, Plaintiff's false arrest claims must fail.

Separate and apart from Plaintiff's ultimate conviction, the record also unequivocally establishes that there existed probable cause for Plaintiff's arrest. "Under New York law, the existence of probable cause is an absolute defense to a false arrest claim." *Jaegly* v. *Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (citing *Weyant*, 101 F.3d at 852); *accord Oquendo* v. *City of New York*, 774 F. App'x 703, 704 (2d Cir. 2019) (summary order) ("Probable cause is a complete defense to a constitutional claim of false arrest[.]"). And the Second Circuit has noted that this logic applies with equal force where allegations of false arrest were levied against private parties. *See Vallen* v. *Connelly*, 36 F. App'x 29, 31 (2d Cir. 2002) (summary order) (noting, in the context of a false arrest claim against three social workers who provided false information to the

16

police that led to plaintiff's arrest, that "[i]f a person were validly convicted of the crime for which he was arrested, he would be barred from bringing a claim for false arrest because one element of such a claim is the absence of probable cause, and a valid conviction establishes the existence of probable cause" (internal citations omitted)); *see also Blackwood* v. *Omorvan*, No. 16 Civ. 644 (NSR), 2018 WL 816839, at *2 (S.D.N.Y. Feb. 8, 2018) (dismissing false arrest claim brought against hospital security guard because plaintiff "was arrested, prosecuted and convicted" and "[t]herefore, there was probable cause to effectuate the arrest"); *Croft* v. *Greenhope Servs. for Women, Inc.*, No. 13 Civ. 2996 (DLC), 2013 WL 6642677, at *5-6 (S.D.N.Y. Dec. 17, 2013) (granting summary judgment on false arrest claim to employee of private drug treatment organization who reported plaintiff's parole violation to police because plaintiff "pled guilty to [the violation], thus conclusively establishing that probable cause existed to arrest her").  "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested."  *Betts* v. *Shearman*, 751 F.3d 78, 82 (2d Cir. 2014) (quoting *Williams* v. *Town of Greenburgh*, 535 F.3d 71, 79 (2d Cir. 2008)).  An identification by a complaining victim may establish probable cause to arrest, unless the circumstances raise doubt as to the complainant's veracity."  *See Palacios* v. *City of New York*, No. 15 Civ. 386 (PAE), 2017 WL 4011349 (S.D.N.Y. Sept. 11, 2017) (""When information is received from a putative victim or an eyewitness,

17

probable cause exists, unless the circumstances raise doubt as to the person's veracity." (quoting *Curley* v. *Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)); *accord Lebowitz* v. *City of New York*, 606 F. App'x 17, 18 (2d Cir. 2015) (summary order).

Here, Plaintiff concedes that Williams and Luna witnessed him throw stolen merchandise on the ground and that Luna positively identified Defendant at the scene of the arrest as the culprit of a theft.  (*See* IPTC Tr. 8:17-9:5, 13:1-4).  Furthermore, Plaintiff was apprehended in the vicinity of the store from which items had been reported stolen, and the arresting officers found on Plaintiff's person a bag containing Rite Aid merchandise for which Plaintiff had no receipt.  (Spears Decl., Ex. E ("Criminal Complaint") at 2). Plaintiff seeks to challenge the validity of the Criminal Complaint arising out of his arrest by arguing that it was not properly verified (*see* Pl. Opp. 6-7); however, the technical compliance of the charging document has no bearing on whether the City Defendants had probable cause to arrest him at the time he was taken into custody.  As the Court has explained, the circumstances leading up to Plaintiff's arrest on June 20, 2015, clearly establish that the City Defendants had probable cause to arrest him.  And Plaintiff musters no argument that calls into question Luna's veracity or any other aspect of the probable cause supporting his arrest.  Accordingly, both Rite Aid's and the City Defendants' motions for summary judgment as to Plaintiff's claim of false arrest are granted.

### 2.    The City Defendants Are Entitled to Summary Judgment as to Plaintiff's Claim for Denial of Medical Treatment

Plaintiff brings a separate Section 1983 claim against the City Defendants for denial of medical treatment, arguing that they ignored his multiple requests for medical attention to tend to injuries Plaintiff allegedly suffered after being struck by the trashcan that Luna threw at him.  (*See* Compl. ¶¶ D.26-29; *see also* Pl. Opp. 7-8).[8]  In seeking summary judgment, the City Defendants contend that Plaintiff's claim fails as a matter of law because he did not suffer from a sufficiently serious medical condition, for which denial of immediate medical attention would constitute a constitutional violation. (City Br. 4-7).  Here, too, the Court agrees with the City Defendants.

Because Plaintiff was a pretrial detainee when he was allegedly denied medical care, his claim falls under "the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight[h] Amendment." *Darnell* v. *Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citation omitted); *accord Yancey* v. *Robertson*, 828 F. App'x 801, 803 (2d Cir. 2020) (summary order).[9]  To establish a claim for deliberate indifference to medical needs under the Due Process Clause of the Fourteenth Amendment, a

---

[8]     Plaintiff's Complaint contains two successive paragraphs both numbered "28."  (*See* Compl. 7).  For clarity, the Court refers to the second paragraph "28" in its pinpoint citations as paragraph "29."

[9]     Plaintiff cites the Eighth Amendment as the constitutional provision entitling him to timely medical attention.  (Pl. Opp. 7-8).  However, as a pretrial detainee at the time he sought medical attention, his rights emanate from the Fourteenth Amendment.  The Court thus assesses Plaintiff's claim under the Due Process Clause of the Fourteenth Amendment, but notes that its conclusion as to his deliberate indifference claim would be no different under the Eighth Amendment.

pretrial detainee must show, by an objective standard, "that the alleged deprivation of medical care was 'sufficiently serious.'" *Horace* v. *Gibbs*, 802 F. App'x 11, 14 (2d Cir. 2020) (summary order) (citing *Salahuddin* v. *Goord*, 467 F.3d 263, 279 (2d Cir. 2006)).  The Second Circuit has defined a sufficiently serious medical condition as "a condition of urgency, one that may produce death, degeneration, or extreme pain[.]" *Hathaway* v. *Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted); *accord Yancey*, 828 F. App'x at 803. Relevant factors in assessing the seriousness of a medical condition include "[i] whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' [ii] whether the medical condition significantly affects daily activities, and [iii] 'the existence of chronic and substantial pain.'" *Walker* v. *City of New York,* 367 F. Supp. 3d 39, 62 (S.D.N.Y. 2019) (citing *Brock* v. *Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).

Here, Plaintiff has failed to raise a genuine issue of material fact as to whether he suffered from a sufficiently serious medical condition, for which the deprivation of medical attention constituted a violation of his constitutional rights.  It is undisputed that Plaintiff was hit by the trashcan that Luna launched at Plaintiff after he fled the Rite Aid store.  In describing the resulting injuries to his leg and hip, Plaintiff explained that "[n]othing was broken at the time.  I was just experiencing a lot of pain, a little numbness in my left side of my leg, and a lot of pain towards my lower back from being str[uck] with something.  Maybe just a little swelling, but not too much."  (IPTC Tr. 11:3-7). This description is corroborated by Plaintiff's medical records, which make no

mention of a more serious injury in the immediate aftermath of Plaintiff's
altercation with Luna and Williams.

Plaintiff's avowed injuries, even when construed in the light most
favorable to him, do not rise to the level of "serious medical need" implicating
the Fourteenth Amendment.  Indeed, courts in this Circuit have declined to
find a "serious medical need" in the context of injuries that were more severe
than those described by Plaintiff.  *See, e.g., Chatin* v. *Artuz*, 28 F. App'x 9, 10
(2d Cir. 2001) (summary order) (finding "a sprained ankle, a bone spur, and a
neuroma" not to rise to the level of seriousness required to establish a
deliberate indifference claim); *Patterson* v. *Westchester Cnty.*, No. 13 Civ. 194
(PAC) (AJP), 2014 WL 1407709, at *7 (S.D.N.Y. Apr. 11, 2014) (finding that
plaintiff's "torn ankle ligaments do not constitute the type of serious medical
need required to state a … deliberate indifference claim" (collecting cases)),
*report and recommendation adopted*, 2014 WL 2759072 (S.D.N.Y. June 16,
2014); *Simpson* v. *Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 445
(S.D.N.Y. 2016) (finding hyperextended leg that induced considerable pain to be
insufficiently serious to support a deliberate indifference claim); *Rodriguez* v.
*Mercado*, No. 00 Civ. 8588 (JSR) (FM), 2002 WL 1997885 (S.D.N.Y. Aug. 28,
2002) (finding bruises on plaintiff's head, back, and wrists as a result of being
kneed in the back and having his head struck against a wall not sufficiently
serious).  On this point, the Court finds relevant Plaintiff's own comments
downplaying the urgency of his need for medical attention, including his
statements that after being taken by the City Defendants to central booking, he

"did not force the issue" about going to the hospital and "tried to stick it out." (IPTC Tr. 17:25-18-3). *See Jones* v. *Meehan*, No. 14 Civ. 6402 (KPF), 2018 WL 459662, at *14 (S.D.N.Y. Jan. 16, 2018) (considering plaintiff's actions reflecting that he "was not terribly concerned" with his medical issues in finding a plaintiff's medical condition to be insufficiently serious to constitute deliberate indifference).

Moreover, Plaintiff's medical records reveal that he, in fact, received medical attention upon arriving at Rikers Island on June 22, 2015. (Spears Decl., Ex. F). Tellingly, the report from this examination does not contain any reference to an injury to Plaintiff's lower back or left leg, nor any complaints of the same. (*Id.* at 7-8 (describing the condition of Plaintiff's back as "normal, unremarkable, non-tender" and his musculoskeletal function as "unremarkable, no tenderness, swelling, or redness [full range of motion]")). At most, Plaintiff was denied medical care for 48 hours and, upon receiving medical attention, did not communicate any urgent medical need related to the injuries he now claims to have suffered.

With respect to the amount of time that elapsed between Plaintiff's initial request for medical attention and his medical examination, courts within this Circuit have found delays of comparable or longer duration to be insufficient to make out a deliberate indifference claim. *See, e.g.*, *Chatin*, 28 F. App'x at 10-11 (finding two-day delay in X-raying injured ankle, and failure to provide plaintiff immediately with crutches, not enough to satisfy objective element); *Patterson*, 2014 WL 1407709, at *7-8 (dismissing deliberate indifference claim

where plaintiff who tore ligaments in his ankle playing basketball was not X-rayed for three days or issued crutches for 11 days).  Conversely, the circumstances of this case are meaningfully different from those in which courts have found a delay in treatment sufficient to state a constitutional violation.  *See, e.g.*, *Salahuddin*, 467 F.3d at 281 (presuming that objective prong of deliberate indifference analysis was satisfied by five-month delay in treatment for Hepatitis C); *Chance* v. *Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (presuming objective prong satisfied where six-month delay in treatment for dental condition led to degeneration, infection, and extreme pain).

The Court takes seriously Plaintiff's allegation of "chronic pain" and "permanent injuries to his lower back, hip and leg[.]"  (Compl. ¶ D.29; Pl. Opp. 8).  However, Plaintiff's medical records indicate that any such chronic injury is attributable to a fall from a roof that bears no connection to the circumstances of this case.[10]  Even assuming that Plaintiff had suffered a chronic injury caused by the impact of the trashcan, he has nonetheless failed to articulate a causal connection between that condition and the City Defendants' alleged delay in receiving medical treatment.  *See, e.g., Walker*, 367 F. Supp. 3d at 63 (dismissing deliberate indifference claim where, "Plaintiff … [did] not allege facts showing any negative consequence resulting

---

[10]    Plaintiff's medical records contain a radiology report from the Clinton Correctional Facility, dated June 20, 2017, referencing Plaintiff's "continued left leg pain, left hip pain," and noting that he "fell off a roof several years ago."  (Dkt. #91-2 at 115).  Neither this report, nor any of Plaintiff's medical records, supports Plaintiff's theory that he developed a chronic injury because the City Defendants denied him medical care for a period of less than 48 hours after he was struck by a trashcan.

from any alleged inadequate or delayed medical treatment."); *Gantt* v. *Horn*, No. 09 Civ. 7310 (PAE), 2013 WL 865844, at *9 (S.D.N.Y. Mar. 8, 2013) ("In cases where temporary delays or interruptions in the provision of medical treatment have been held to satisfy the objective seriousness requirement, they have involved either a needlessly prolonged period of delay or a delay that caused extreme pain or exacerbated a serious illness.").

In sum, Plaintiff has failed to demonstrate that he suffered from a sufficiently serious medical condition or that the temporary deprivation of medical attention constituted a deliberate indifference to his constitutional rights. The Court therefore grants the City Defendants' motion for summary judgment as to Plaintiff's claim for denial of medical attention.[11]

### 3. The Court Denies Summary Judgment as to Plaintiff's Claim for Excessive Force Against Rite Aid

The Court reads the Complaint as asserting an excessive force claim pursuant to Section 1983 against Rite Aid, stemming from Williams's and Luna's physical encounter with Plaintiff prior to his arrest. (*See* Compl. ¶ D.26; IPTC 21:21-25). Plaintiff's excessive force claim against Rite Aid centers on the theory that Williams and Luna, two Rite Aid employees acting

---

[11] In addition, the City Defendants argue that they are entitled to qualified immunity on each of Plaintiff's claims. (City Br. 10-12). *See generally Rivas-Villegas* v. *Cortesluna*, 142 S. Ct. 4, 7-8 (2021) (discussing principles of qualified immunity). As Plaintiff has failed to raise a triable issue of fact as to his claims for false arrest and deliberate indifference, the Court declines to delve into the remainder of the qualified immunity inquiry. *See, e.g., Ramos* v. *City of New York*, No. 18 Civ. 4938 (ALC), 2020 WL 4041448, at *4 (S.D.N.Y. July 16, 2020) (declining to reach issue of qualified immunity with respect to false arrest claim where there was probable cause for the arrest); *Ravenell* v. *Van der Steeg*, No. 05 Civ. 4042 (WHP), 2007 WL 765716, at *7 (S.D.N.Y. Mar. 14, 2007) (declining to reach question of qualified immunity where plaintiff failed to show deliberate indifference).

within the scope of their professional duties, were acting in concert with the City Defendants when they assaulted Plaintiff, including by throwing a trashcan at him. (*See* Pl. Opp. 2-4). Rite Aid argues that any and all of Plaintiff's Section 1983 claims must be dismissed because the Complaint is devoid of any allegations suggesting that Rite Aid or any of its agents was a state actor for purposes of Section 1983. (Rite Aid Br. 1, 7). But, as the Court previously alluded to, it is unable to determine whether there exists a triable issue as to Rite Aid's status as a state actor without discovery having been conducted into the issue.

In deciding whether to grant summary judgment in the absence of discovery, a court must consider: "[i] whether the lack of discovery was in any way due to fault or delay on the part of the nonmovant; [ii] whether the nonmovant filed a sufficient Rule 56(f) affidavit ... and [iii] whether the nonmovant provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion." *Castlerigg Master Invs. Ltd.* v. *Charys Holding Co.*, No. 07 Civ 9742 (GEL), 2008 WL 449690, at *2 (S.D.N.Y. Feb. 19, 2008) (quoting *Wells Fargo Bank Nw., N.A.* v. *Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 360 (S.D.N.Y. 2002)). Here, Plaintiff is not responsible for the absence of discovery and there is a chance — albeit slim — that additional evidence will affect the outcome of subsequent summary judgment proceedings. While the Court finds summary judgment to be inappropriate on Plaintiff's excessive force claim at this stage in the proceedings, the Court

nevertheless outlines the applicable legal standards to help guide the parties in the discovery process moving forward.

"Claims that law enforcement officers have used excessive force … in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen [are] analyzed under the Fourth Amendment and its 'reasonableness' standard." *Usavage* v. *Port Auth. of N.Y. & N.J.*, 932 F. Supp. 2d 575, 591 (S.D.N.Y. 2013) (quoting *Graham* v. *Connor*, 490 U.S. 386, 395 (1989)).  "When determining whether police officers have employed excessive force in the arrest context, the Supreme Court has instructed that courts should examine whether the use of force is objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to [the officers'] underlying intent or motivation.'" *Jones* v. *Parmley*, 465 F.3d 46, 61 (2d Cir. 2006) (alteration in original) (quoting *Graham*, 490 U.S. at 397).  To evaluate the reasonableness of an officer's conduct, a court should "consider the facts and circumstances of each particular case, including the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest."  *Thomas* v. *Roach*, 165 F.3d 137, 143 (2d Cir. 1999) (citation omitted).  "Additionally, on an excessive force claim a plaintiff must present sufficient evidence to establish that the alleged use of force is objectively sufficiently serious or harmful enough to be actionable."  *Washpon* v. *Parr*, 561 F. Supp. 2d 394, 406 (S.D.N.Y. 2008) (internal quotation marks omitted).

Force, however, is only part of the inquiry on Plaintiff's excessive force claim against Rite Aid.  An essential element of any Section 1983 claim is that "the conduct complained of [was] committed by a person acting under color of state law[.]"  *Pitchell*, 13 F.3d at 547.  While the state action requirement is often satisfied by defendants who are government officials acting with state power, a private actor may act under the color of state law when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello* v. *Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes* v. *S.H. Kress & Co.,* 398 U.S. 144, 152 (1970)); *see also Standardbred Owners Ass'n* v. *Roosevelt Raceway Associates, L.P.*, 985 F.2d 102, 105 (2d Cir. 1993) ("[I]n order for private conduct to qualify as state action, … [t]here must be either a symbiotic relationship between the state and the defendant, such as, for example, … a close nexus between the state and the alleged wrongful conduct.").

In the context of a private individual's interactions with the police, it is well established that a private party's mere provision of information relating to an ongoing robbery does not amount to "willful collaboration" giving rise to Section 1983 liability.  *Johns* v. *Home Depot U.S.A., Inc.*, 221 F.R.D. 400, 405 (S.D.N.Y. 2004); *see also Luciano* v. *City of New York,* No. 09 Civ. 359 (DC), 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009) ("[M]erely supplying information to a police officer does not make the supplier of information a state actor.").  A call to the police, even one resulting in a suspect's detainment, is not, by itself, state action under Section 1983.  *See, e.g., Ginsberg* v. *Healey*

*Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999) (affirming dismissal
of Section 1983 claim based on lack of evidence that defendant, who called
police for assistance regarding disturbance by customer, engaged in joint
action with police officer pursuant to "an agreement or plan"); *Liwer* v. *Hair
Anew*, No. 99 Civ. 11117 (SAS), 2000 WL 223828, at * 2 (S.D.N.Y. Feb. 25,
2000) ("Even assuming, *arguendo*, that defendant called the police for
assistance, this does not mean that defendant so closely aligned itself with
state actors as to come within the purview of [Section] 1983.  Where a private
person merely seeks the assistance of the police to quell a disturbance, the
private party is not 'jointly engaged' in the police officer's conduct so as to
render it a state actor under [Section] 1983." (internal citation omitted)).  While
the Court is skeptical of Plaintiff's ability to marshal facts suggesting the City
Defendants were somehow involved in assaulting Plaintiff beyond merely
receiving information from Luna, it cannot rule out the possibility without a
factual record on which to rest its conclusion.

### 4.    The Court Denies Summary Judgment as to Plaintiff's State-Law Claims for Assault and Battery Against Rite Aid

Finally, Plaintiff brings state-law claims of assault and battery against
Rite Aid, stemming from Williams's and Luna's altercation with Plaintiff as he
fled the store with stolen items.  (Compl. ¶¶ 25-27).  No discovery has occurred
into these issues; however, the Court expects the evidence bearing on these
claims to be substantially similar to that related to Plaintiff's excessive force
claim.  For the reasons discussed above as to the propriety of summary
judgment without the development of a factual record, the Court denies Rite

Aid's motion for summary judgment as to Plaintiff's claims for assault and battery.

**CONCLUSION**

For the foregoing reasons, summary judgment is GRANTED in full as to the City Defendants. Rite Aid's motion for summary judgment is GRANTED as to Plaintiff's false arrest claim, but DENIED as to Plaintiff's claims for excessive use of force, assault, and battery. The Clerk of Court is directed to unstay this case, and to terminate the motions at docket entries 96 and 102.

The Court acknowledges that its decision to curtail discovery factored into the disposition of Rite Aid's motion and that it failed to envisage all of the factual circumstances — as unlikely they might be — that could give rise to a genuine dispute of fact as to Rite Aid's status as a state actor. The Court has now come to appreciate the difficulties attendant to resolving this issue without a fully developed factual record. Accordingly, the Court will permit discovery to proceed on Plaintiff's remaining claims against Rite Aid. Mindful of the efforts hitherto expended on this motion and the fact that discovery must be "proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), the Court will permit Plaintiff to take two depositions of relevant individuals of his choosing. The Court cautions Plaintiff, however, that given prior difficulties in locating Felix Luna and Jermaine Williams, he might not be able to depose either of them. Similarly, if Rite Aid wishes to depose Plaintiff, it may do so.

The remaining parties to this action are hereby ORDERED to submit a proposed case management plan, which includes a proposed schedule for the

discovery that will take place on Plaintiff's remaining claims, on or before

**February 25, 2022**.

The Court also anticipates that it will not require plenary briefing if Rite Aid wishes to pursue a second round of summary judgment practice after discovery.  The Court expects that it will be able to take into consideration the arguments presented in the current briefing on the instant motion and will likely require only supplemental briefing.

The Clerk of Court is directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:      January 25, 2022
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge